**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| NATHAN BELL, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NORDIC WARE, INC.<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Nathan Bell ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Nordic Ware, Inc. ("Defendant").

**NATURE OF ACTION**

1.      This is a class action lawsuit on behalf of purchasers of Defendant's Nordic Ware Aluminum Bakeware (the "Products[1]") in the United States.

2.      Defendant manufactures, labels, advertises, markets and sells aluminum bakeware under its "Nordic Ware" label, all directed from Minnesota.  Defendant sells

---

[1]The Products include all aluminum bakeware sold by Defendant that is labeled, packaged, or marketed with claims that the products are "made in the USA," "Made in America," or "American Made."

1

the Products throughout the United States, including in the States of Massachusetts and Minnesota.

3.    Defendant is one of the leading market players in the 3.84 billion dollar bakeware industry.  Indeed, in 2019, Defendant's sales marketing executive vice president Jennifer Dalquist, reported that the Defendant had sold more than 72 million bundt pans *alone*.  Ms. Dalquist also reported that in 2019 Defendant's bundt pans were so popular they simply couldn't "keep them in stock."  Further, as of 2019, bundt pans were only 20% of Defendant's business. In fact, in February 2019 Ms. Dalquist disclosed that Defendant sold 10 times more in cookie sheets alone.  According to Ms. Dalquist, "the math on that," is "a pan every couple seconds being sold somewhere in the world."

4.    Moreover, Defendant's 2019 sales are a mere drop in the bucket.  The following year, during the COVID-19 pandemic, Defendant saw an increase in sales of "around 400%."

5. Defendant advertises, markets, and sells the Products as products that are "made in the USA," "made in America," or "American made" (collectively the "USA Representations"), along with a prominent image of the flag of the United States of America:
















6.      Defendant even goes so far as to stamp the actual pans with an impression

that states the Products are "Made in the USA":





5

7.    Defendant features the USA Representations on online listings for the

products:



8.    Defendant's CEO, David Dalquist has admitted that consumers will pay a

"premium for U.S.-made products" and that Defendant has found that consumers are

willing to pay approximately a 10 percent premium for an American-made product versus

an import.

9.    Problematically for consumers, the USA Representations are false and

misleading because all, or virtually all of the aluminum and bauxite used to make the

Products is obtained outside of the United States, and all of the transformation of bauxite into alumina and the transformation of alumina into aluminum occurred in Canada.

10.     Plaintiff brings this action individually, and on behalf of all similarly situated individuals who purchased the falsely and deceptively labeled Products for violations of Minnesota Statute §§ 325F.67, *et. seq.* and 325F.68, *et seq.*, Massachusetts Gen. Laws Ch. 93A, and fraud.

## PARTIES

11.     Plaintiff Nathan Bell is a citizen and resident of Nahant, Massachusetts who has an intent to remain there, and is therefore a domiciliary of Massachusetts.  On June 29, 2025, Plaintiff purchased a two pack of Nordic Ware Naturals Aluminum Half Sheet Pans from Amazon.com for $39.99.  Prior to his purchase of the Products, Plaintiff reviewed the Product's labeling and packaging and saw that his Products were labeled and marketed as being "made in the USA."  In purchasing the Products, Plaintiff relied on Defendant's representations that the Products were "made in the USA." Plaintiff saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Products were "made in the USA" and that all, or virtually all, of the components in the Products were sourced from the USA.  Plaintiff relied on these representations and warranties in deciding to purchase his Products. Accordingly, those representations and warranties were part of the basis of the bargain, in that he would not have purchased his Products on the same terms had he known those representations were not true.  In making his purchase, Plaintiff paid a price premium for Products that were "made in the USA" of at least 10%. In other words, he paid a price

7

premium of at least $3.99 for his half sheet pans.  Had Plaintiff known that the "made in the USA" claim was false and misleading, Plaintiff would not have purchased the Products, or would have paid substantially less for the Products.

12.     Defendant Nordic Ware, Inc. is a Minnesota corporation with its principal place of business at 5005 County Road 25, St. Louis Park, Minnesota 55416.  Defendant markets, sells, and distributes the Products throughout the United States, including in the State of Massachusetts.  Defendant marketed and sold the Products during the class period.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because: (1) this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs; (2) there are over 100 members of the putative class; and (3) there is minimal diversity, because at least one class member is a citizen of a state different than Defendant and, because Plaintiff is a citizen of Massachusetts, while Defendant is a Minnesota corporation with its principal place of business in Minnesota.

14.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) and (d) because Defendant maintains its principal place of business in, and is thus a resident of, this State, maintains minimum contacts with the United States and this State and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in Minnesota.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

**A.    Defendant Misrepresents the Products are "Made in the USA"**

16.    Defendant falsely and misleadingly labels its Products, as depicted above (*supra* ¶¶ 5-7) and below, as being "made in the USA."









17.    Defendant is well aware that the USA Representations are material to an ordinary and reasonable consumer in deciding what products to purchase and deciding to pay more to purchase Defendant's products compared to similar products not nearing the USA Representation claims.  The USA Representations on the Products' packaging, labeling, advertising, and marketing are conspicuous and designed to grab the consumer's attention using color versions of the United States flag to drive home the origin claims.

9

The Products prominently make the USA Representations on the front label, packaging, and on the physical products.

18. In this way, Defendant's carefully designed its labels, advertising, packaging, and products, including the placement of the USA representation, to perpetuate the false notion that the Products are in fact "made in the USA." Defendant intends that ordinary and reasonable consumers viewing the Products will read the claim, understand the claim, and rely on the claim to make purchasing decisions.

**B.      "Made in USA" Labeling**

19. Traditionally, the Federal Trade Commission ("FTC") has required that products marketed and advertised as "Made in the USA" be "all or virtually all" made in the United States.

20. In 1996, the FTC published its Enforcement Policy Statement on U.S. Origin Claims to guide marketers that wanted to make an unqualified "Made in the USA" claim under the "all or virtually all" standard as well as those who wanted to make a qualified "Made in the USA claim."

21. In 2021, the FTC formally enacted the rule on Made in USA Labeling (the "Labeling Rule"). Under 16 C.F.R. § 323, "Made in the United States" means:

> any representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.

16 C.F.R. § 323(a).

10

22.     Per the FTC, examples of express "Made in USA" claims include, but are not limited to, "Made in USA," "Our products are American-made," "USA," "Manufactured in USA," or "Built in USA."

23.     Examples of implied claims include, but are not limited to, US. Symbols or geographic references like U.S. flags, U.S. maps, or references to U.S. locations of headquarters or factories.

24.     The Labeling Rule codified the "all or virtually all" standard for "Made in USA" claims on products:

> it is an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2.

25.     The FTC has also clarified that "all or virtually all" means that the product should contain no – or negligible – foreign content.

26.     The FTC has gone on to give examples of deceptive conduct arising from the foreign content in products with "Made in USA" claims, including but not limited to the following:

> **Example 1:** A company produces watches at a plant in Nevada using mostly U.S. parts and labor. All watches include movements, which are the parts that allow the watch to keep time. The company uses inexpensive Swiss movements in its watches. Movements account for a small proportion of the costs to make the company's watches, but without the

movements, the watches can't tell time. Because movements are essential to the watches' function, an unqualified Made in USA claim is likely deceptive.

**Example 2:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An unqualified Made in USA claim is deceptive for two reasons: The base is not far enough removed in the manufacturing process from the finished product to be of little consequence and it's a significant part of the final product.

27. Raw materials and components are also included in the "all or virtually all" analysis. The FTC has provided the following example to guide marketers:

**Example 3**: If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article. By contrast, consider the plastic in the plastic case of a clock radio otherwise made in the U.S. of U.S.-made components. If the plastic case was made from imported petroleum, a Made in USA claim is likely to be appropriate because the petroleum is far enough removed from the finished product, and is an insignificant part of it as well.

**C.    Reasonable Consumers are Misled by the USA Representations**

28. The USA Representations lead reasonable consumers, like Plaintiff, into believing the Products are "made in the USA" and "made in America." More, specifically, reasonable and ordinary consumers interpret the USA Representations to mean that all parts of a product, including any natural resources it contains, originated in the United States.

29.     The USA Representations are material to ordinary and reasonable consumers.  Indeed, in 2020 when the FTC conducted a workshop and called for public comment on Made in the USA labeling, one comment noted that Consumer Reports testing found that 80% of consumers prefer to buy American products.  Similarly, another comment reported that 2018 testing found that 92% of survey respondents had a favorable view of manufactured goods in America.

30.     Moreover, as discussed above, Defendant's CEO has admitted that consumers will pay a "premium for U.S.-made products" and that consumers are willing to pay approximately a 10 percent premium for an American-made product versus an import.

31.     Similarly, Mr. Dalquist has admitted that Nordic Ware "cater[s] to the people that appreciate American-made products[,]" and "[t]hat's who buys Nordic Ware."

32.     But Nordic Ware's USA Representations are false.  Indeed, Mr. Dalquist has admitted the aluminum in the Products is originally sourced from Canada and that Nordic Ware has been facing higher costs for aluminum as a result.  According to its attorneys, it is Nordic Ware's understanding that the aluminum is imported into the United States from Canada in the form of aluminum ingots which are processed into aluminum coil in factories located in Wisconsin and Pennsylvania.  An exemplar of aluminum ingots is below:



33.    Photos of the aluminum coils in use at Defendant's factory are below:





34.    Further, in or around March of 2025 following a surge in litigation relating to Made in USA labeling, Defendant began to revise its online labeling and marketing on

its website.  Defendant has not revised labels and marketing for Products available in retail stores or at third party retailers.  The new online labeling and marketing features a qualified claim stating that the Products are "made in America with domestic and imported materials", as shown below:





35.     Aluminum is a fundamental component of Defendant's bakeware because it is lighter and transmits heat more evenly than other materials used for bakeware.  Indeed, Defendant's founder, H. David Alquist specifically designed the Products out of aluminum because of these characteristics.

36.     That the aluminum is sourced internationally is no surprise because the raw material for aluminum is bauxite, the only commercial ore of aluminum.

37.     The largest suppliers of bauxite for aluminum include Australia, Guinee, India, Brazil, and Jamaica.

38.     In contrast, none of the bauxite mined in the U.S. has been used for aluminum since approximately 1981.

39.     Indeed, in 2023, only a limited amount of bauxite was produced for non-metallurgical use in Alabama, Arkansas, and Georgia.  U.S.-mined bauxite is used for abrasives, high-temperature refractory materials, and as a high-strength proppant for hydraulic fracturing of oils and gas wells.

40.     Moreover, the Atlantic Alumina Company LLC ("Atalco") owns the last operating alumina refinery in the United States.  While the refinery is located in Gramercy, Louisiana, the bauxite it refines is mined from Atalco mines located in Jamaica.

41.     Given the foregoing, it is virtually impossible to source U.S.-mined bauxite and U.S.-made aluminum in the United States.  As such, the aluminum used in Defendant's products necessarily must be sourced from foreign nations.  Canada is a logical source because it is the world's fourth-largest primary aluminum producer, following China, India, and Russia.  Bauxite is not mined domestically in Canada, and Canadian refineries rely on imported bauxite to support their aluminum production.  Moreover, Canadian aluminum is easily accessible to Defendant because Canada and the United States share a border.  As a result, Canadian aluminum would have lower transportation time and costs.

42.     Without aluminum (and bauxite) sourced from outside the United States, Defendant would not be able to manufacturer its Products, all of which are aluminum based.  First, as described above, all – or virtually all – of the bauxite ore used to create

17

aluminum is sourced from outside of the United States. Second, Defendant has admitted that its aluminum is sourced from Canada, meaning that all, or virtually all, of the aluminum in the products is sourced from outside the United States, rendering the USA Representations false and misleading.

## CLASS ALLEGATIONS

43.    **Class Definition**. Plaintiff seeks to represent a class defined as all persons in the United States who purchased Products with unqualified USA Representations within the applicable statute of limitations (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

44.    **Subclass Definitions**.

a.    **Massachusetts Subclass.** Plaintiff also seeks to represent a subclass consisting of Class members who purchased Products with unqualified USA Representations in Massachusetts within the applicable statute of limitations.

45.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

46.    **Numerosity.** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are

18

thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

47.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

        a.    whether Defendant's labeling, marketing, and promotion of the Products is false and misleading;

        b.    whether Defendant's conduct was unfair and/or deceptive; and

        c.    whether Plaintiff and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

48.     With respect to the Massachusetts Subclass, additional question of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated Mass. Gen Laws Ch. 93A.

49.     **Typicality**.  The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

50.     **Adequacy of Representation**.  Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

51.     **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation of the Minnesota Prevention of
### Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*)
### (On behalf of the Class)

52. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

53. Defendant is a citizen of the State of Minnesota.

54. Minnesota's Private Attorney General Statute (Minn. Stat. § 8.31, subd. 3a) allows Plaintiff and the Class to bring a claim under Minn. Stat. § 325F.69.

55. The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely therein in in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. . ." Minn. Stat. § 325F.69(1). Defendant advertised and represented to Plaintiff and members of the Class that the Products possessed certain qualities and characteristics, including but not limited the USA Representations, when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

56.     Other states across the Country have enacted substantially similar consumer protection statutes which require the same or similar showings of proof, and which prevent the unlawful conduct described herein. .[2]

57.     Defendant's made advertisements and representations to Plaintiff and the Class that the Products were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

58.     Defendant states that the Products purchased are "made in the USA."

59.     Defendant intended for Plaintiff and the Class to rely upon, and accept as true, the representations and omissions with respect to the USA Representations.

---

[2] *See* Alaska Stat. § 45.50.471, *et seq*., Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq*. and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, 815 ILCS § 505/1, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. §§ 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq*.

60. Defendant's representations and omissions with respect to USA Representations were made in connection with the sale of the Products to Plaintiff and the Class.

61. Defendant intentionally and/or knowingly misrepresented that the Products were "made in the USA" to Plaintiff and the Class.

62. Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers that the Products were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

63. Plaintiff and the Class relied upon, and were in fact deceived by, Defendant's USA Representations in deciding to purchase the Products over similar products offered by competitors.

64. Plaintiff and the Class were injured in fact and suffered actual damages as a result of their reliance on Defendant's representations and omissions with respect to the USA Representations. Defendant's wrongful conduct was the direct and proximate cause of the injuries to Plaintiff and the Class. Because of Defendant's fraudulent conduct, the value of the Products has been greatly diminished.

65. Had Plaintiff and the Class been aware the USA Representations were false, Plaintiff and the Class would have either paid less for their Products or would not have

23

purchased them at all.  Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

66.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

### COUNT II
### False Advertising
### (Minn. Stat. § 325F.67, *et seq*.)
### (On behalf of the Class)

67.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68.     Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Consumer protection laws of other states make similar conduct unlawful.

69.     Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's Private-Attorney General Statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorney's fees.

70.     By engaging in the conduct herein, Defendant violated and continue to violate Minn. Stat. § 325F.67 and the similar laws of other states.

24

71.    Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example:

a.    Defendant's fraudulent, misleading, and deceptive statements relating to the true quality and characteristics of the Products;

b.    Defendant's fraud and misrepresentations by omission with respect to information about the USA Representation and Defendant's knowledge of the falsity of those representations;

c.    Defendant's concealment of the true nature of the Products and the origin of the Products' components; and

d.    Defendant's omission that the Products were not "made in the USA," because all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

72.    As a result of Defendant's conduct, Plaintiff and those similarly situated have suffered actual damages in that they have purchased Products that were deceptively sold as "made in the USA" and worth less than the price they paid.  There is an association between Defendant's acts and omissions as alleged herein and the damages suffered by Plaintiff and those similarly situated.

73.    As a result of Defendant's untrue, deceptive, and misleading assertions and representations about the Products, Plaintiff and the Class have suffered damages because they would have either paid less for their Products or would not have purchased them at all had they known the Products were not "made in the USA."  Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

74. Defendant has similarly violated the consumer-protection statutes of the various states.

75. Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

**COUNT III**
**Violation of Masschusetts Gen. Laws Ch. 93A, § 2**
**(On Behalf of the Massachusetts Subclass)**

76. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77. Plaintiff brings this claim individually and on behalf of the members of the proposed Massachusetts Subclass against Defendant.

Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

78. Plaintiff, members of the Massachusetts Subclass, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

79. Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

80. The Products constitute property under Mass. Gen. Laws Ch. 93A.

81. Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

  a. Misrepresenting the approval or certification of goods;

b.      Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c.      Representing that goods are of a particular standard, quality, or grade, if they are of another;

d.      Using deceptive representations or designations of geographic origin in connection with goods or services;

e.      Advertising goods with intent not to sell them as advertised;

f.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

g.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

h.      Representing that goods have been supplied in accordance with a previous representation when they have not been.

82.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

83.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature

that they could not have been reasonably avoided by consumers.

84.     Defendant was provided with pre-suit notice, although Defendant is not a Massachusetts-based company and holds no property in Massachusetts.

85.     Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

86.     Plaintiff and the members of the Massachusetts Subclass have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, inter alia, they lost money when they purchased the Products and/or paid an inflated purchase price for them.

87.     Defendant knew, should have known, or was reckless in not knowing, that the Products were not "Made in the USA" as represented.

88.     Defendant had a duty to disclose that the Products were not actually "Made in the USA" because Defendant had knowledge of the true facts related to the Products before marketing and selling them.

89.     As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Class have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

90.     Plaintiff and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

91.     Plaintiff seeks all available relief under this cause of action

## COUNT IV
### Fraud
### (On Behalf of the Class and Massachusetts Subclass)

92.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Massachusetts Subclass against Defendant.

94.     As discussed above, Defendant provided Plaintiff and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were "made in the USA."

95.     These misrepresentations were made with knowledge of their falsehood.

96.     The misrepresentations made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

97.     The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

29

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendant as follows:

a.    Certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and the Massachusetts Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.    Declaring that Defendant's conduct violates the statutes referenced herein;

c.    Finding in favor of Plaintiff, the Class, and the Subclass against Defendant on all counts asserted herein;

d.    Awarding Plaintiff and Class and Subclass members their costs and expenses incurred in the action, including reasonable attorneys' fees;

e.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

f.    Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

g.    Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 28(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

30

Dated: March 25, 2026          Respectfully  submitted,

/s/ *Robert K. Shelquist*
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
Robert K. Shelquist (MN 21310X)
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Telephone: (612) 254-7288
rshelquist@cuneolaw.com

Yeremey O. Krivoshey (*pro hac vice forthcoming*)
Brittany S. Scott (*pro hac vice forthcoming*)
**SMITH KRIVOSHEY, PC**
28 Geary Street, Suite 650 No. 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
yeremey@skclassactions.com
brittany@skclassactions.com

Joel D. Smith (*pro hac vice forthcoming*)
**SMITH KRIVOSHEY, PC**
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: 888-410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

31